Welcome to the United States Court of Appeals for the Sixth Circuit. We have three cases this morning. When you approach, please let me know how much time you have reserved. Please call the first case. Case number 163375, William Thomas v. City of Columbus, Ohio, et al. Oral Argument not to Exceed 15 Minutes per File. Mr. Dichalmos for the appeal. Good morning, Your Honors. Good morning. Judge McKeague, I would like to reserve four minutes for rebuttal argument, please. You may. Please proceed. Thank you. Your Honors, this case fundamentally involves the sufficiency versus the weight of the evidence. And it is the appellant's position that the district court erred in its analysis under Rule 56 and engaged in weighing the evidence as opposed to evaluating the admissibility or sufficiency of primarily circumstantial evidence. As the court knows, this case involves the shooting death of a 21-year-old member of the community who had called 911 when his home was being invaded by two criminals. And the responding officer, the defendant, William Thomas, in this case, as the lower court found, violated numerous policies and procedures that govern these specific kinds of calls. His primary failure in that regard is he did not coordinate his efforts with other officers and he more or less rushed in immediately as soon as he arrived on the scene. Yeah, I mean, and I understand, you know, your point there, but it's not particularly germane, right, to the issue before us. And on the other hand, I think he, I mean, he's running towards danger, you know, in a 911 situation. So, I mean, that itself doesn't seem very culpable on his part. I appreciate that, Judge. I would argue that it is relevant for purposes of evaluating the credibility of his version of the events, which the singular issue in this case, I think everyone would agree, is did Destin Thomas point a firearm at Officer Kaufman at the time he fired? How does his credibility impact the fact that he violated policies? How does that affect his credibility? Because what happened, Judge, is he shot the homeowner, the victim, who was calling for help, and he realizes that pretty early on. And then nine days, and he's violated all these policies and procedures that brought about this confrontation. And so it goes to his motivation to tell his version of the events nine days later. His only explanation He doesn't deny that he violated those policies, does he? He doesn't admit them. He doesn't admit it, Judge. The facts that he rushed in there without backup or all these policies, I mean, there he's He does not deny that he did not, he does not deny that he rushed in. Okay, since he doesn't deny a violation of the policy, I don't know how that affects his credibility. What I'm getting at, Your Honor, is this armed confrontation was brought about as a result of the violation of policy, so The fact that the policy was violated doesn't mean there was a constitutional violation. I agree, but I do think it goes to his motivation to tell his version of the events, because had he followed policy, this armed confrontation would not have ensued. That doesn't mean he's not telling the truth. Not necessarily, but I do think it's circumstantial evidence that goes to the credibility of his testimony. And there's a lot of circumstantial evidence that goes to the credibility of his version of the events. And as the case law that we cited for, Your Honor, sets forth in these situations where the only other person who can speak to a contrary version of events has been shot dead by the officer, the law would instruct the court to be very, very careful in these situations. And a court may not simply accept what may be a self-serving account by a police officer and must look at the circumstantial evidence. And by self-serving, you mean his version may help his case. I mean, the fact that a party testifies in a way that helps his case, I mean, people call it self-serving, but I mean, that's testimony. And the fact that it favors his case doesn't mean we disregard it, does it? No, I'm not asking the court to disregard it. I'm asking the court to permit a jury to evaluate its credibility under the totality of the circumstances, which are you have this young man who, by all accounts, acted very reasonably throughout. He kept his cool. Did he have the gun in his hand when he ran out of the house? We have no evidence to suggest that he did not, so we're not contesting that. He did have the gun when he ran out of the house. The case law and the defendants would admit Why would he have the gun? I mean, he doesn't like firearms, according to his father, and he, you know, thinks they're dangerous. Why would he be, I guess, chasing the burglar out with the burglar's firearm? I mean, that doesn't seem No, Judge, they were chasing him because this firearm was not loaded. So he wrestled it from these intruders somehow. He wanted to get the gun from these guys who were invading his home. Correct, yes. That's a better alternative than Yes, he acted heroically, I would argue. He was able to take this gun. It didn't deter the criminals because the criminals knew it was not loaded, so they continued to chase him. The evidence would suggest that Destin Thomas and the intruders knew the police were there. He was on the phone trying to call the police. The position of the cruiser would have been visible from his room. There's voices on the 911 call that can be heard saying, the police have been called or something to that effect. We gotta go. We gotta go. And the officer was dressed in a bright white police uniform. It was daylight out. And Destin, we believe more likely than not, knew the police were there. He was running to the safety of the police. He did have this gun. Why does he have the gun? Because he's wrestled it from the intruders that were using it. No, why does he have it on his possession? Why did he take it with him? He just tried to get it away from the people who were robbing him, Your Honor. I know. Once he got it away from him, why did he take it in his possession and run with it? I think the facts would say they were in such close proximity to him, he did not want to give that gun back to the criminals who were trying to rob him in his home. He didn't have a safe, presumably, to put it in, I guess. Correct. And he didn't know it was unloaded either. There's no evidence he knew that. He was trying to keep it away from the people that were robbing him. The case law would say, and the defendant admitted under oath, that just running with a gun, and we cited those cases for the court, having a gun, walking with a gun, or just not warrant the use of deadly force. If the officer feels that his life is threatened by a weapon, I mean, whether or not it's pointed directly at him, if he has a reasonable belief that the firearm in possession of somebody else threatens his life, he has the right to use excessive force, does he not? I agree with that premise. I think the case law would instruct the court that the gun does have to be used in a threatening manner. Well, it has to be objectively perceived by the officer as being used in a threatening manner. Whether it, in fact, is or not, I don't think is the distinction. It's whether he reasonably believed it did. Agreed. And this particular defendant testified at deposition that if Destin Thomas was not pointing the gun at him and was just running with it, it would have been unreasonable for him to use it. Well, that's a legal issue. I mean, witnesses, lay witnesses, cannot testify as to issues of law. So that doesn't have any weight to me. I would argue he was testifying to his perceptions that day. Let me go back to the facts for just a second. I can make sure that whether we all are or are not in agreement, and then I'd be interested in how you would respond to a question that I have once we establish the facts. We know that he pulls his car up. It's pretty close to the door. He gets out of the car and he starts towards the apartment as your client Destin is heading the other way. How far away, at the time they first saw each other, how far away do the facts seem to suggest to you that they were at that point? Somewhere on the order of between 10 and 40 feet. There's no way to get it any closer than 10 and 40? I think at the time that the shots were fired, it was approximately, I think the testimony is 10 feet. There was a stippling pattern on this young man's chest that would suggest it's an intermediate gunshot. So the barrel of the gun was approximately 3 to 4 feet. That's a second shot, right? We don't know. There's two shots. You think, the way you see the facts, that they might have seen each other 40 feet away and that gap had closed to 10 by the time he fired the shot? The facts would support that interpretation, Your Honor. So what I'm wondering about, and I don't know the answer to this question, so I'm interested in your view. It does seem to me that these are fairly unusual facts in the sense that you have two people running at each other and they get within 10 feet. In this case, your person has a gun on him. So regardless of whether the gun was actually pointed or the gun was at his side or it was in his arm as he's running, so the gun would be waving presumably, then does the police officer have the right to shoot at that point when somebody, he doesn't know that he's the homeowner, he doesn't know he's the good guy, he doesn't know he's coming for help. So when somebody's running at you and gets within 10 feet of you with a gun in your hand, does the police officer at that point have the right to shoot? I think there's a strong argument under the law that would say no. Explain to me why that is. What was the police officer at that point supposed to do when they're running at each other and they get within 10 feet? Well this officer had time to yell hey. That's the only thing he yelled to Destin Thomas before he fired two shots. And that didn't apparently stop him from advancing towards him with a gun, right? Apparently not. He could have given a command, he could have said police, he could have said freeze, he could have announced himself, your honor, but just running with a gun does not support the use of a gun. Well, I agree in a general concept. The broader we take this out to say running with a gun doesn't justify shooting somebody. I don't think anybody would argue with that. But police operate under what's called the zone of danger concept. So that when somebody gets within a certain range and they reasonably fear for their safety or their life, they're authorized to use deadly force. Usually, although there's nothing in the record in this case, usually what people tell us is that's 25 feet. When, in this case, the bad guy gets within 25 feet, that's when they have reason to actually fear for their life or their safety. The interesting one here, regardless of the zone of safety, is this is only 10 feet. So there's no indication that the police officer really had the opportunity to do anything else, it seems to me, if the law says that somebody running at you with a gun in their hand, whether pointed or not, is enough to shoot somebody. That seems to me what we're down to here. Well, my time is up, Judge. I would just respond quickly. I would respectfully disagree that if somebody just running with a gun is within, I think the 21-foot rule is what you're speaking to, within 21 feet. I don't think that's established. I think that this young... Well, let's assume it's not 21 feet. You've told me that it was in 10 feet. I would say that you and I are about 10 feet apart, right here. And so now combine the fact that there is speed. Let's assume that I got to my spot and you got to your spot running in opposite directions. So we're closing, by the time that you get there and I get here and we're both running towards each other, we're going to close extraordinarily quickly, are we not? Agreed. In a matter of a second or probably, a second or two. Almost no time for reaction. I agree. I think the evidence would show it was somewhere between 10 to 40 feet, Judge. I don't think we can definitively say it was only 10 feet when they first saw each other. I think it was as far as 40 feet when they first saw each other. I get that. So let's assume that that's correct. But you've told me earlier that when he shot him, he was still coming towards him and he'd gotten within 10 feet of him, right? The evidence... Your client is still moving and the police officer is still moving. So just looking at where you and I are right now, at that point, what was the police officer supposed to do other than employ whatever method he had available to him to stop the person with the gun getting any closer? I think he should have offered a command and not shot unless the gun was pointed at him. And we think there's substantial evidence that this young man would never point a gun at the police. He called the police for help. Everything he did was reasonable. He wouldn't blow that now. So they should have basically then run into each other and wrestled over the gun? Is that the idea? No. I mean, I think what police procedure tactics would dictate is that the officer would take cover. That the officer would have fire and take cover. I mean, Dustin Thomas was not going to sprint and tackle this officer. Well, he didn't know. He didn't know who Dustin Thomas was. That's the problem. I think we've established at least what the question is, if not the answer. I appreciate the court's concern. All right. So think more about that if you would, please. Thank you, Your Honor. That's the concern that I have in the case. Thank you. Mr. Mangan? May it please the court, counsel, my name is Tim Mangan. I'm here on behalf of the Epelise Police Department. I'm here to speak on the case of Officer Todd Kaufman in the city of Columbus. To answer a couple of your questions, I think, the record seems to establish that the officer was approaching the breezeway. Now, I think the important thing to know there is he had a reasonable basis to believe that these were suspects. That was reasonable. He's going to an armed, not armed, but home invasion that's ongoing. He knows there are suspects in the house. When he gets there, two people come running from the house. One has a gun in his hand. That is certainly not unreasonable to believe. So it's more than just somebody running with a gun. And he doesn't see the gun immediately. Everything happens, we know the time is very short here. From the time he pulls up until the time of the shooting, it's 13 seconds. So he moves the short distance across the parking lot, turns, sees the people. He testified that it was moments from the time he saw the gun, the gun was raised, and he fired. When you say 13 seconds, does that mean from when the car stopped? So during the 13 seconds he had to get out and head towards the door. So that took up some seconds. So it's a matter of 10 seconds, let's say, or less, that transpired from when the two people see each other. Yes. And then when he gets there, he then sees them. It's hard to tell within that 10 seconds when he sees them. It's certainly sometime within the 10 seconds. And within that 10 seconds then, he sees the gun. And then within a moment or two, he sees the gun raised. Well, I mean, that's his testimony. I have to say that one thing that kind of bothers me about the way this case has been handled so far, some of the reasoning in the district court, is this idea that as a matter of law, apparently, the jury is obligated to accept the testimony of a particular witness, here the officer. I mean, I haven't seen that notion anywhere, that a jury would not be entitled, simply based on its assessment of the officer's demeanor, manner, credibility, et cetera, at trial, that the jury would not be entitled to say, you know what, I don't believe that witness. I think that witness is lying. Okay, Judge, on that, I agree that if there is evidence that discredits or contradicts the testimony or the statement of the officer, I agree. The cases all say that. If there is evidence, whether it be statements, whether it be physical evidence, medical evidence, that isn't the case here. It seems awfully strange that the jury needs extrinsic evidence in order to disbelieve the testimony of a witness. Like, let's say this goes to trial and the evidence is as it is here, the record is as it is. I mean, would the judge instruct the jury that they must believe the officer's testimony? No, Your Honor. But let's assume in that, let's pursue that, because I think that Judge Kethledge is right on the point here. The issue of what they will or will not believe, it seems to me comes down to the facts of this case as to whether the officer is right that he really raised his arm and pointed his gun at him like he was going to shoot. It seems to me there's every possibility that the jury might think that. That's unlikely, if not impossible under the facts of this case. So I'm also then curious to go back to where I was with Mr. DiCello, and that is, let's assume the jury does disbelieve that. What's the city's position as to whether the officer had the right to shoot when it seems to be undisputed that they were running towards each other, they got very close, and this allegedly robber had a gun in his hand, even if it wasn't pointed at him? What do you say as to whether he still had the right to shoot him, even if the jury disbelieved that? I think, Judge, as long as it's reasonable to believe that the totality of the circumstances establish that the officer had a reasonable basis to believe that he was at the risk of serious physical harm, the Constitution does allow use of deadly force. That's just a conclusion. Was it reasonable under the facts of this case, if he didn't have the gun raised, but he had it in his hand, and they're running towards each other, and they get within ten feet before the police officer shoots him, is that reasonable under the law, or isn't it? What do you say? I would have to say, if a person reasonably believed to be a suspect in a home invasion, I don't think there's any challenge to that. That was reasonable to believe. It didn't turn out to be the case, but it was reasonable. An officer running towards that situation to render assistance, if somebody comes out with a gun, I do think if the gun is not raised at that point, if the officer could have a reasonable basis to believe he was at risk of serious, he doesn't have to wait until that gun comes up. Doesn't Garner say that you have to issue a warning if feasible? Your Honor, in this case, I don't think... That's not my question. Okay, I'm sorry. My question is, doesn't Garner say that the officer has to issue a warning, if feasible, before shooting an armed suspect? I don't think that's what Tennessee v. Garner says. I think Tennessee v. Garner says... It does. ...the fleeing felony suspect, and it says, in that case, it doesn't say it's mandated, but it does say that, it doesn't talk about... I don't think Tennessee v. Garner says that if somebody believes somebody's a suspect in a break-in, and he's coming out with a gun, and he's pointing it, I don't think Garner says that. We're really wasting time. Garner says, and if, where feasible, some warning has been given. Your Honor, I looked at that sentence, and I think that there's a distinction between the fleeing felony suspect there, and a situation where somebody... This is where we waste time in these arguments. You're arguing with Judge Kethledge as to whether Garner says those words, or... It says those words. It indisputably says those words, so we're wasting time. You have a distinction as to why it doesn't apply in this case. Okay, fine. That's legitimate. Okay. Let me say that I share your interest in this line of inquiry about what happens if we say the jury could reject the officer's testimony. We're trying to talk about the case law here, sort of on the fly, about that. I personally, I think it would be helpful to perhaps get letter briefs from the parties on the question whether if the jury were to disbelieve this officer's testimony, would he be entitled to qualified immunity or not? Okay. It's just, it's not addressed in the briefs. I think I can address... Judge Kethledge, would it make sense to hone more in on what you're interested in they might disbelieve? It seems to me that there isn't really any factual dispute here, except as to did he raise the gun and point it? Right. No. Yeah, I agree. So we assume that they were running towards each other. We assume they got within 10 feet. We assume that he had a gun in his hand. We assume the cop said, hey, and he doesn't stop. And at that point, if the jury disbelieves that he pointed the gun at him, was the officer still entitled to qualified immunity? Is that basically it? Exactly. Can I address that, please? Well, I think the issue was whether he reasonably believed that the weapon was pointed at him, not whether it actually happened. And I think it could have occurred while he was running, as Judge McKeague said. He has a gun in his hand, and as he's running, he could be pointing the weapon in the direction, or the officer could reasonably believe that it was pointed at him, whether or not he stood there and physically came. We're not trying to say what you argue in your briefs. We just want you to tell us what will happen if the jury disbelieves the fact that he, I mean, the police officer is pretty specific about it. Raising his arm, pointing his gun, which does seem to have been sort of unlikely to have happened. So just assume the jury disbelieves that, and then argue whatever you want to argue. Both of you. Does that work? Well, Judge... That'd be great. Okay, how long can it take, how long can it take you to do that? Well, I do think, Judge, just to answer your question, I do think whether the gun was raised or not, if he reasonably believed there was a risk of serious physical harm, then that would be sufficient under the Constitution. That's kind of what we're asking. Okay. Okay, assume the gun is at his side. It's the scenario Judge McKeague described, closing quickly within 10, 15 feet at the time of the first shot. Can the officer shoot at that time, under garner, its progeny, et cetera, without violating the Constitution? And relatedly, does he have qualified immunity? How clear is the law? And here's the gloss I would put on that, too, and maybe it helps the concern that Judge gun and pointed it at him like he was going to shoot. It seems to me, and let's assume for a second that the jury would have some reason to disbelieve that because it just doesn't sound very right. Similarly, it's very hard to imagine under the facts of this case that he's actually running and his hand is at his side, not moving. It seems to me this gun is moving as his arms move, when people's arms move when they run. Probably. So, and now you guys can argue that that's not a reasonable assumption for us to make, but if he disbelieves he's pointing, but the gun is waving around, which I think is back sort of where Judge Griffin is, then does he have the right to shoot him under these narrow facts, or doesn't he? And if there's a reasonable basis to believe? Sure. And I think for- So how long will it take you to do that? A couple weeks. You can do it in a couple weeks. But it's your burden to overcome qualified immunity, so why don't you go first in two weeks, take another week to respond, and I don't see any need for replies here. We pretty much know what the issues are. Okay. Does that work for both of you? Yes. Does that work? Sure. That's great. Can I just address, though, on summary judgment, for purposes of summary judgment, what is the evidence that discredits it? And there is no evidence to discredit. No, there isn't, because he says he didn't like guns. His father said that. Assume that's true. That is not circumstantial evidence of anything other than in an ordinary circumstance, he would likely not have had a gun. That's the only thing that suggests. It doesn't suggest anything as to his actions. Secondly, when you talk about his state of mind, he was probably in fear whether or not the gun came up or was moving or running, or if he thought it was another bad guy, that's where he could have been. Are you talking about the officer at this point, or- Well, I mean, there are some things the district court didn't or seemed to overlook in its analysis of whether the circumstantial evidence would allow a jury to disbelieve the officer's testimony that Thomas isn't just doing this, but that Destin Thomas really bears down on him, if I may. So he calls the police himself. The officer is dressed in uniform clearly as a police officer. So one does have to kind of wonder, why would Destin, with this burglar right behind him, why would Destin want to kill the officer that he has brought to the scene? I don't think that's the case. I don't think there is any reason to believe he wanted to kill him. Well, then why would he bear down? I mean, couldn't a jury be skeptical that he would now bear down on the officer whom he just summoned to the scene? The subjective intent of Destin Thomas is really not at issue. It's the officer's belief that is really at issue. Judge, when you say- No, no, no. The question is not at this point what the officer thought. The officer said he, in a quite deliberate manner, points the gun at the officer. We're not talking about arm-waving stuff at this point. Now, maybe the officer might have perceived it that way, but the officer says he bore down. And whether Destin Thomas would have had a reason to or a motivation to would certainly seem to be relevant to whether, in fact, he pointed his gun at the officer in the way the officer said. But the officer would never have known. All he knew was what he believed to be a suspect in a felony running towards- Yeah. I think we're kind of missing each other on this. The other thing, Judge, is the idea of everything that is to the contrary that would discredit. I think if there's- What about nine days? Why? Isn't it kind of unusual after a fatal shooting that the officer says nothing for nine days? Meanwhile, he's cooped up with his lawyer, and then he comes out with, I think, a written statement about what happened. Isn't that- Couldn't a jury draw an inference that he was trying to figure out a story that would minimize his exposure legally? Well, Judge, they have- It's best if you can just answer, and I don't mean to give you a hard time. He has a right, just like anybody else, a criminal investigation is a- Understood. But couldn't a jury be a little bit skeptical that if Destin Thomas points the weapon at him in the manner the officer said, don't you think the officer would just immediately tell people that? He pointed the gun at me. He pointed the gun at me. What was I supposed to do? I mean, isn't this exactly the kind of thing that allows a jury to say, with due respect, I don't believe this testimony? It seems to be. Evidence, though, that contradicts that. The fact that he didn't talk for nine days, which is not illegal or improper- It's not illegal, but a jury- But that's not evidence of dishonesty. The jury cannot rely on that as evidence of dishonesty. I don't believe that could ever happen. That's not evidence of dishonesty. The fact that he may have hated guns is not evidence- It seems to be wanting direct evidence, perhaps. I mean, it's circumstantial. No, circumstantial evidence. I don't think it's circumstantial. If a police officer, in the midst of a criminal investigation, doesn't say anything, I don't think that's evidence on the other side to discredit him. If he didn't like guns, it's not circumstantial that the gun didn't come out. I understand your answer. I do think that we have an officer who does face a dangerous situation, and to second guess everything, that's what the Constitution does not permit. We look forward to hearing what each of you have to say on that specific. Thank you. All right. Thank you. Mr. DiCelio, anything further? Thank you, Your Honor. At this point, I know better than to not accept yes for an answer, or perhaps in this case, maybe for an answer. So I think I would just take my remaining time to make sure I understand the court's instructions with respect to filing a supplemental brief. It's my understanding that the appellant will file a brief within two weeks of today, and we will submit that just in the normal course to the clerk's office, and that the appellees will then have two weeks to respond. Seven days to reply to that. Seven days to reply. Seven days to respond, and no replies. If we would want oral – And we really don't need more than – this is a pretty narrow question we're asking. We really don't need more than ten pages. Sure. Ten pages. Okay. And will I have the opportunity to request oral argument on this issue? No. No. I think this is it. Okay. All right. I guess the only other issues that were not addressed, and I think they would hinge on the underlying constitutional violation here, which the court has instructed us to further brief. I think the fact that there was no warning is – it's purely a fact issue. Was it feasible to provide a warning in this case? I don't know how there's conclusive evidence that a juror could never find that there was sufficient time. The officer himself admitted he had time to say, hey, he could have said police, freeze. I really think – Was it obvious he was a police officer? I mean, he was in uniform, wasn't he? He was. And it was daylight. And the car was there? Correct. It was visible. So the fact that he was a police, the fact that he yells police, what would that accomplish? You can argue anything you want, but you've got two people running at each other with to suggest that under the facts of this case, he then had to say, stop, and wait for him to see if he stopped, at which point they'll be six inches away from each other. Seems really pretty fanciful under the facts of this case. Understood. Now, if your guy wasn't running, if the police officer wasn't running, if they were further away, then, you know, that's a whole different scenario that's not present in this case. Understood, Your Honor. With my few minutes left, the other issue we did not yet address at least at oral argument before the court is the... How about my question? What should he have yelled? You said he should have yelled something besides, hey, what... And Your Honor, I may be conflating two issues. I mean, the policies and procedures would dictate that he announce himself as soon as he arrives on the scene. It's obvious that he's a police officer, isn't it? Correct, but if he... So what's the point of announcing it? I guess I'm outside of the segmented analysis, Judge, and I appreciate that. I think if he had announced himself when he arrived on the scene... Then drop it. Yeah. One more syllable. Yeah. Drop the gun, okay. Yeah, drop it, stop, freeze. You know, the problem I have with a qualified immunity case is these are split-second decisions by officers, and if they make the wrong decision, they'll get killed, and we have enough police killings in the United States already that, and to say that they could have done this or could have done that or they could have been dead... Appreciate that, Judge. It's tough. And we also have a young man... And the other thing on a summary judgment motion, a qualified immunity motion, is that you don't get to the jury every time you say, I don't believe the evidence. You have to establish a genuine issue of material fact, not just the fact that I raise an issue, but it has to be genuine. Agreed. And usually it has to be, all right, the evidence on one side says this, what do you have to contradict that? You need something. And here you just say, well, my something is that I think maybe we could not believe the officer. Well, that would be every case. Every case you would go to a jury, and I don't think that's what the standard is, is it? I agree with you, but I think the circumstantial evidence in this case is somewhat overwhelming, and I would just respond to your... Overwhelming? Okay, tell me why again. Yeah, well, you have a young man who called the police for help, was waiting for them to arrive... No, we're at the officer's perspective now, not the decedent's perspective, but the officer. And what he knows is that there was a break-in, and he sees two individuals running out, one with a gun in his hand, so he reasonably suspects they're both the suspects. So, okay, now from the officer's point of view, what do we have? Circumstantial evidence that he was not in fear of his life. He testified that he had to anticipate that the homeowner would flee with a gun in his hand. He testified that he would. He testified to that, Your Honor, and it's in our briefs, because one of the things you have to account for when you're going to a home invasion is there's a victim inside that home, and then there's an intruder inside the home, and the victim could run. In fact, the policy that says to announce yourself is to avoid a confrontation with the victim. This victim was in his pajamas. He was naked, but for his shorts, and he was running out of his house naked. So we're asking about what the officer feared. I mean, didn't he testify that but for Destin Thomas allegedly raising the gun, that he did not think, he would not have felt endangered at that moment? He did. He absolutely did. So we're supposed to disregard that, but accept everything else in his testimony, I guess, in the district court's analysis, perhaps. I'm not sure that's what he really said. He said, as a general proposition, you can't shoot somebody because they have a gun. No, we put it in this context. If Destin Thomas didn't draw down on you, it would have been unreasonable to shoot him. We'll look at it. And let me just assure both of you, we understand the importance of this case. We understand the sensitivity of this, both from the standpoint of the victim here being the one that ends up getting shot. We understand the dangers that police officers are in. This is a no-win case, really, for both sides, because you end up with a young man that's dead that still should be alive. So we understand that. We're concerned about whatever we say under the facts of this case, where it goes with the law and the circuit. I'm sure you understand that. So that's why we want to see what our alternatives are here in the event that if a jury did disbelieve the question of whether the young man had his hand pointed at the officer, does that make a difference in this case as to whether it should go to a jury? Appreciate your time. Thank you, Your Honors. We'll give it close consideration and the case will be submitted. Thank you both. Thank you.